No. 12583

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

IN THE MATTER OF THE ESTATE OF
WILLIAM BIRKELAND, Deceased.

Proponents of the Will,

Appellants,

CONTESTANTS OF THE WILL,

Respondents.

---

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable Robert H. Wilson, Judge presiding.

Counsel of Record:

For Appellants:

Jones, Olsen and Christensen, Billings, Montana
Robert Zimmerman argued, Billings, Montana

For Respondents:

Church, Harris, Johnson and Williams, Great Falls,
Montana
Robert P. Goff argued, and Douglas C. Allen argued,
Great Falls, Montana
Peder Moe, Jr., Billings, Montana

---

Submitted:  January 16, 1974

Decided: FEB 2 6 1974

Filed: FEB 2 6 1974

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Proponent and appellant Barbara M. Marshall, Public Administrator of Carbon County, Montana, brings this appeal from an order of the district court of Carbon County in favor of contestant and respondent, Thelmar Birkeland, refusing to admit into probate a proposed will of William Birkeland, deceased.

William Birkeland, a resident of Carbon County, Montana, died on August 28, 1972. His estate had an appraised value of $81,882.34.

The proposed will was drafted by attorney William Blenkner of Columbus, Montana, on or about October 26, 1970, at decedent's request. Contrary to the advice of attorney Blenkner, decedent did not execute the will in the attorney's office but rather had the instrument mailed to him. The instrument contained an attestation clause and, in a letter accompanying it, attorney Blenkner provided instructions for its proper execution. Decedent apparently attempted to execute the will; however, the facts are undisputed that he did not follow the instructions. Decedent procured the signatures of Thorvald Stene and Adolf Hovland on the attestation clause of the will on separate occasions. On both occasions he attempted to conceal the nature of the document from these witnesses. It also appears that prior to obtaining these signatures, decedent crossed out portions of the typewritten document.

Thorvald Stene testified:

"Q. When you were at Mr. Birkeland's house was there anybody else there? A. No.

"Q. You were there by yourself? A. Nobody in the room. I don't know. Missus could have been in the yard or somewhere, I don't know, but she wasn't in that room.

"Q. So it was just you and William Birkeland? A. Yeah.

"Q. I see. Now when he brought this document to you, what did he say? A. He told me, 'I got a paper here I want--I like to have you sign.'

"Q. I see. Did he ever tell you what that paper was? A. No.

" * * *

"Q. I have just one more question. Mr. Stene, when I was asking you questions prior to this didn't you say that Mr. Birkeland's signature may or may not have been on there? A. It could have been, I don't know."

Adolf Hovland testified:

"Q. He didn't tell you what was in it, he didn't tell you it was his will? A. No.

"Q. He gave you the impression it was none of your business what it was? A. That's right.

"Q. And so you didn't inquire further? A. No, I didn't ask him, I just signed it.

"Q. Now you recall distinctly that Mr. Stene's signature was on that document? A. Yeah.

" * * *

"Q. Was there any other conversation with Mr. Birkeland about this instrument other than what we have already talked about in Court here today? A. Oh, I just asked him if he figured this here was okay.

"Q. And in those words? A. And he nodded his head, yes.

"Q. Just you and Mr. Birkeland were alone together at the time? A. Yes."

Attorney Blenkner testified the instrument in question was brought to him by Martin Lofthus, the executor named therein. However, after interviewing witnesses Stene and Hovland, Blenkner declined to offer the instrument into probate.

At the conclusion of a full hearing, the district court entered a finding of fact that the purported will was not executed and attested in the manner required by section 91-107, R.C.M. 1947, and denied its admission into probate.

The issue before this Court is whether the district court erred in refusing to admit the purported will into probate.

Section 91-107, R.C.M. 1947, provides:

"*Written will, how to be executed.* Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will, and a nuncupative will, must be executed and attested as follows:

"1. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto;

"2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority;

"3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

"4. There must be two attesting witnesses, each of whom must sign his name as a witness, at the end of the will, at the testator's request, and in his presence."

Montana law provides that the right to dispose of property by will is entirely statutory and at least a substantial, if not an exact, compliance with the statutory requirements is mandatory. Estate of Connelly, 138 Mont. 153, 355 P.2d 145; In re Noyes' Estate, 40 Mont. 178, 105 P. 1013.

Appellant points out that Montana's statutory (sections 91-209 through 91-212, R.C.M. 1947) and public (In re Swords' Estate, 129 Mont. 165, 284 P.2d 674) policies favoring testacy require that a liberal construction be given where possible to effect the testator's wishes. Appellant urges that Hovland's above quoted testimony demonstrates a "substantial compliance" with subparagraphs 2 and 3 of section 91-107, R.C.M. 1947. We agree with the "liberal construction" and "substantial compliance" policies but we cannot agree with appellant's application. Applying the "substantial compliance" concept to the degree sought by appellant, under the facts of this case, would defeat the very purpose of section 91-107, R.C.M. 1947. There must be substantial compliance with the statute not compliance with a

- 4 -

substantial portion of the statute.

The only favorable evidence produced by appellant was the fact that the document itself contained a standard attestation clause recital of proper execution and attestation. Appellant correctly contends that the presence of an attestation clause in the regular form presents a prima facie case of proper execution of the will. However, as in In re Swords' Estate, 129 Mont. 165, 284 P.2d 674 and In re Rudd's Estate, 140 Mont. 170, 369 P.2d 526, the contrary testimony of the attesting witnesses is sufficient to rebut the prima facie case and create an issue for the trier of fact. Appellant relies heavily upon this Court's decision in Swords. Understanding that Swords was decided on evidentiary grounds, it should be noted that in Swords there were evidentiary considerations present which are absent in the instant case. There, the testatrix, herself, Mrs. Swords, was an experienced legal secretary who meticulously prepared her own will and was familiar with the requisites of proper execution of a will. Under those circumstances the court there, as trier of the fact, upon proper showing was entitled to hold that the attestation clause presented a prima facie case of due execution and prevailed over witnesses to the contrary. The court as trier of fact determines which facts offered on a certain point are "satisfactory as evidence thereon".

Concerning this Court's scope of review, the Court said in In re Rudd's Estate, 140 Mont. 170, 176, 369 P.2d 526:

> "Also our inquiry into the evidence is limited to whether the findings of the trial court are supportable when the evidence is viewed in the light most favorable to the prevailing party. See Barcus v. Galbreath, 122 Mont. 537, 207 P.2d 559."

The evidence before the district court fully supports its finding that the purported will was not executed and attested in substantial compliance with section 91-107, R.C.M. 1947.

The judgment and order of the district court are affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 6 -